May it please the court. My name is Arthur Mullins. I represent Mark Evans. I would like to reserve three minutes for rebuttal. I'd also like to focus solely on Issue 1. Mr. Evans would rest on the arguments presented in his briefs on the remaining issue, unless there are any questions. The issue I want to discuss is the Feretta right to self-representation, but more broadly this case concerns the right of an indigent defendant to manage and control his defense. This right is taken for granted for those clients that have the means to hire and fire lawyers, but for the indigent defendant who was appointed counsel, he obviously does not have that right to pick and choose his attorney. For this reason, this Feretta right, the right to self-represent, to represent oneself, is critical and must be taken seriously. Unfortunately in this case, Mr. Evans, although clearly and unequivocally requested the right to represent himself, this court denied summarily that request without holding a hearing or seriously considering his request. You're just talking about the sentencing time, right? That's correct. Well Judge, I'm talking about the sentencing hearing, yes. That is correct. Just as a practical matter, if he gets the right to represent himself, what better could he do than what the lawyer did for him here in sentencing? Usually these come up when it's the middle of a trial and then you have to have some kind of a Feretta proceeding and so forth, but this is in sentencing and is there something that he would put in or say he would put in if he was representing himself? There is, Judge, and I think first of all I'd just like to point out that obviously here in federal court the sentencing phase of a case is extremely serious. Most of these cases are resolved before trial and in sentencing there's a vast discretion and this judge had incredible discretion on what type of sentence to impose. Mr. Evans asked to represent himself because he clearly had a disagreement with his court-appointed attorney on how to present his mitigation, how to present evidence in rebuttal specifically concerning the weight, which is one of the issues I raised, but there were other issues. Mr. Evans indicated that he wanted to call witnesses. I'm certain he would have wanted to prepare and submit evidence that his attorney did not submit at that sentencing. Obviously what the ultimate outcome would be could be better or could be worse whether Mr. Evans was representing himself, but the critical point here... He knows, of course, that... He does, Judge. Yes, and... Does he have a lot of education or does he have no education? Judge, from reading the transcript I can tell you that Mr. Evans has done a great deal of research. He is obviously serving a considerable amount of time, but he has spent a lot of time with the facts of this case and this is a very fact-specific driven type of case with lots of witnesses and lots of parts. No one knows the facts better than Mr. Evans and I think that is one of the reasons why his request to represent himself should have been taken seriously in this case. It seemed that... It seems like he was focused on motions that counsel wouldn't file rather than the sentencing proceeding when he was asking for new counsel. Well, Judge, you're right. At the beginning of the case he started to request substitute counsel and he had disagreements with his lawyer on several issues. One being he felt that he wasn't being provided discovery. In fact, there was a hearing about that several months into after he was appointed. I don't think the client had discovery six months after the appointment. So that was kind of the beginning of the problems. There were motions that he wanted his attorney to file. Perhaps some of those motions wouldn't have been well-founded, but once it got to the point where it was clear he went through a trial with an attorney, he was unsatisfied with that attorney's performance. He got to the point where it was clear the judge denied his right for a very critical phase, and obviously that's the sentencing phase. Mr. Evans wanted to present evidence to challenge issues that were going to affect his guidelines. And for that reason, I think there's an arc of dissatisfaction with the counsel that he had. There were requests for the counsel to do various things that the counsel chose not to do. But ultimately, once Mr. Evans realized this judge was not going to he did decide that he was going to be better off representing himself to make sure that he could present the type of defense that he wanted to present at the sentencing phase. Let me remand this. Who's going to be the lawyer at the sentencing to start? Judge, I would... You or is that going to be him or his former counsel or somebody else? I believe that the procedure should be... I believe the case should be remanded for a hearing, just for a FRERETA hearing. And based on my belief in discussions with Mr. Evans and reading the transcript, I don't think there will be any doubt that he will be granted the right if the judge actually holds a colloquy and considers the issues that he needs to consider about whether or not Mr. Evans is knowingly and intelligently waiving his right to the assistance of counsel, I don't think there will be any doubt that he will be provided the ability to defend himself. So at that point, he will be defending himself, Your Honor. And then is it a complete do-over in your estimation? I believe it's a complete do-over as far as the sentencing... That's what I mean, the sentence. Yes, Your Honor. And for that... Let's go back just a second, maybe to a more fundamental point. For obvious reasons, you contend not only did he have the right to self-representation, but that the failure to provide this FRERETA hearing was structural error, so then we don't get into what he would have or should have or could have done, correct? Yes, Your Honor. Has the Supreme Court said that the right of self-representation and a structural error in the absence of that also extends to sentencing as well as the trial itself? Judge, the Sixth Circuit did... Has the Supreme Court said? I don't believe so, Your Honor. I don't believe they specifically said that. So if we then go to our precedent, which of course is binding on us, one of the cases is United States v. Jones, and that's one where the court, for example, says, thus we may safely say that a criminal defendant in federal court has a right to represent himself or herself at sentencing. So that would be, at least arguably, an extension of what the Supreme Court has said, correct? I agree, Judge. Now we go on then and we read about what they said in Jones, probably dicta. They clearly say that the right of self-representation is limited accordingly, and what they're talking about in limiting it accordingly is the genesis of this comes in connection with your right to represent yourself before a jury. And the court seems to me to say that if there's not a jury, either because it's a bench trial or obviously there's not a jury in sentencing, then maybe there are some limitations. Does that make some sense? I'm following you, Your Honor. Whether it makes sense or not, you're following me. That was a very good answer. I like that. That was a good answer. So here, if there are these limitations, then that seems to me, even based on what we've said in the Sixth Circuit, that seems to be somewhat different than saying that it's a structural error in connection with the lack of self-representation at sentencing. What would your response be to that? Judge, my response is that in looking at the right to represent oneself, I think it's helpful to look at the right to the assistance of counsel. And I don't think there's any doubt that if the assistance, the right to assistance of counsel was denied a defendant at sentencing, that would be considered a structural error. And there would be no question that that would go no further. But Jones says, therefore, the defendant's right to self-representation is satisfied if the pro se defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the pro se defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel. Then it goes on and talks about sentencing. So what's odd in this case, it seems to me, is that it appears as if he did have the right to freely address the court during the sentencing. Your Honor, I would agree that he addressed the court at sentencing. Where I disagree, however, is a couple places. Number one, I would just argue that because the court made it clear he was not entitled to represent himself on November 28th at the hearing when he requested that right four separate times, he was told no. Mr. Evans was not in a position to adequately prepare. He was not in a position to subpoena witnesses to testify at that sentencing if he so desired to do so. And so there was a number of things that Mr. Evans could have done and would have done had he been granted the right to represent himself. Well, let's talk about that for just a second because that's, I think, at least in part, what we're all concerned with here. When you look at all of the pro se motions that he filed and you try, would you agree they're pretty rambling? It's a little hard to figure out exactly what he's saying in a lot of them. That's fair, Your Honor. But if you try to extract what he's complaining about, it seems to me to be overwhelmingly complaining about what happened at the trial. The government presented knowing, perjured evidence, so on and so forth. It's very hard to find anything in all those things that he was concerned about that actually were relevant to the sentencing itself. So if we do get to the point of what would he have done or why should we send this back, it does seem to me that under Jones we would be entitled to give some consideration to whether there was something that he wanted to do at sentencing that he was prohibited from doing. Is that fair? Judge, I think I would take issue with this. And I think throughout all his motions there is an underlying attempt to demonstrate that the factor concerning the amount of marijuana involved in this case was grossly over-represented in the PSI and ultimately found by the judge. Whether or not this court agrees with that assessment, that's clearly something Mr. Evans wanted to attempt to demonstrate to the court. And so that issue alone, I think he should be entitled to present his defense at sentencing. How would he show that just theoretically? How would he show that he was really not responsible for all that since the court's already made a finding of fact here? Well, Judge, if it's remanded, I think the court would obviously be asked to reconsider that finding of fact and consider the evidence presented at the sentencing. There's a myriad of witnesses, including corrections officers, that Mr. Evans at different times attempted to subpoena and have testify. Normally that decision would be predicated on what had been actually offered at the trial. In a sentencing you get witnesses that are called if there wasn't a trial. Say there's a guilty plea and then there's a dispute about quantity. You don't have a trial record to base it on, but here you have a trial record upon which a jury's made its determination. That's correct, Your Honor. If the judge makes the decision based upon the facts in that trial record, granted both sides can argue their version of what those facts show, but he actually did that, didn't he? Judge, but he did not have, Mr. Evans did not have the ability and he did not have the full attempt or right to demonstrate to the court why that finding of fact was inaccurate. By calling other witnesses.  Is it an unequivocal demand for self-representation if you keep reiterating that I want a different lawyer? No, it's not, but that's not what happened here. Mr. Evans did that. That happened in two out of four at a minimum. Well, if you indicate to the court, I want another lawyer, but if you're not going to give me that lawyer, I want to represent myself. That's exactly what happened in Morby-Haviland, and that was two attempts when he asked to go pro se, and I think that case is directly on point and should lead to this court remanding. Mr. Evans, I see my time has expired. If there are no more questions, I'll take a seat. All right. Thank you. You'll have your rebuttal. May it please the court. Good morning. My name is Mark Erskine. I'm here on behalf of the United States. This court should affirm the trial court's sentence in part and issue a limited remand for that limited purpose of reimposing the period of supervised release. Here, the district court did not err when it chose not to conduct a FRERTA hearing, and the district court did not commit clear error when it found that the defendant was accountable for between 20 and 40 kilograms of marijuana. With respect to the FRERTA issue, here the defendant did not make an unequivocal request, a clear and timely unequivocal request to represent himself. As the courts have noted, when we're dealing with the issue of self-representation, we're dealing with two sides of the same coin. On the one hand, the right to counsel, and on the other hand, the right to self-representation. Is an unequivocal statement that I don't want this lawyer, I would like a different lawyer, but if you refuse to give me a different lawyer, I want to represent myself, is that enough? Your Honor, that is not an unequivocal assertion of the right to represent oneself. Here in the November 28, 2012 hearing, the defendant first was addressed by the court with regard to the various pro se motions that the defendant had filed. I'd like to focus on my question. Why is that not unequivocal? Your Honor, because of the context. Here, as I was saying, the very first thing that the court did... I'm asking my statement. Yes, Your Honor. Why is that not unequivocal? It's a two-step position, but it's very clear. And the ultimate position is that if you are going to give me a choice between this lawyer and no lawyer, then I want to represent myself, and I insist on representing myself. Because I think in this particular case... I want you to focus on my question, and then you can distinguish it from your case. But I would like to know whether that is a sufficiently unequivocal statement of the assertion of the right of self-representation. On the contrary, it's not unequivocal. It's an impulsive statement made when the court has made a ruling that the court would not substitute counsel at the last minute before sentencing. Here, when the... If... I'd like... I just... Please focus on the hypothetical, not this case, okay? Yes, Your Honor. How do we know that it's impulsive without inquiring into whether it is impulsive or a considered position? Because when a defendant, generally speaking, equivocates between wanting counsel on the one hand and then not wanting counsel, and makes the assertion that, well, I want to represent myself if you're not going to let me have this lawyer, courts can and should treat that with some skepticism. Because what we're dealing with with a defendant in that case is the court is having to act as referee to make a determination. Does this person want to be represented by counsel, or does this person want to represent themselves? So is it possible? Are you allowed? I mean, constitutionally, can one say, I would rather have a new lawyer, but in the absence of that, I will represent myself rather than have this lawyer. Can someone take that position and assert a right of self-representation, or does one have to say, I don't care who the lawyer is, I want no lawyer whatsoever, I want to represent myself. It's impossible to assert the right in that context? Well, I think that Moore v. Avaland is instructive on this point, which is the case cited by the appellant. In that case, not only was the initial request made that I want to represent myself, but there was actually a follow-up the following day in writing that I want to represent myself. And essentially there was a deliberative act on behalf of the defendant in that case to say, you know, no, I still want to represent myself. By contrast here, we didn't have that. We had it in the context of the November 28 hearing that I want to represent myself. Then we actually had subsequent pro se motions again filed by the defendant where he made no reference to the fact that he wanted to represent himself. Instead, it was the same request that had been made previously. I want effective counsel. I want a new lawyer. When was that? Did he file that last motion after the trial? It was after the trial, and that last pro se motion was filed after the November 28 hearing and before the January 2013 actual sentencing hearing. Why would that be controlling? He's asked to represent himself, arguably, on the 28th, and the judge said no. So why does that make a difference that then after that he's still quibbling about this lawyer that he tried to get rid of and the judge wouldn't let him get rid of? Well, Your Honor, because of the fear a trial court would have that an individual was vacillating between do I want counsel or do I not want counsel, I think that Moore v. Hallihan is instructive in that regard because you actually have some distance between the impulsive statement made in court, well, then I'm going to represent myself if you're not going to appoint a different lawyer, whereas here, given that opportunity, he didn't do that. You'll recall that in making the court's ruling, the district court judge said, I think that for now I'm not going to make any change. If we come back and it turns out that you guys have not been able to work this out, as they had demonstrated various times before, then basically we'll take it up at that point. What's your source of this issue of impulsive? Is there a case that talks about something being impulsive? Your Honor, there is a case law out of, I believe it's out of the Eighth Circuit, about impulsive requests to proceed per se should be treated with skepticism. And they use the word impulsive there? Yes, Your Honor. Isn't that exactly the reason why you would have a FARETA hearing, to determine if it was or was not impulsive? It's our position that having the FARETA hearing itself has to be triggered by that unequivocal request. Given the context of this particular defendant. Is there anything circular about that? I think that it's important, Your Honor, to look, though, at the fact that we had a defendant here who was on the one hand saying he wanted counsel, then he didn't want counsel. In the context of the November 28 hearing, initially, two times to start out the hearing, the judge said, now, let me be clear, you're not asking to represent yourself, and you want counsel, to which the defendant replied, yes, sir. And then there was a second question as well, saying, now, you're asking me to appoint a new lawyer. Yes, sir. And then it was just several pages after that in the transcript, in the course of the hearing, that the defendant said, well, because I can't raise these ineffective assistance of counsel claims, and basically raising the issues for a motion for a new trial, he was dissatisfied with the results of the trial. Because of that, I want to represent myself. What's your position on whether it's structural error to not accord the right of self-representation, assuming that you've adequately invoked it, at sentencing as opposed to a trial? Your Honor, it's our position that it would not be a structural error at sentencing. All of the case law that discusses it being a structural error is in the context of self-representation at trial. And clearly, we're not dealing with trial at this point. We're only dealing with the sentencing hearing. So harmless error would apply, then, in your view? Under United States v. Jones, I think it would, yes. What's the best case you have about that? United States v. Jones, Your Honor. So when you have a case like this with all these pro se motions, many of which seem to raise issues directing the court's attention back to what happened during the trial as opposed to the sentencing, how do we really parse out what he would or wouldn't have done at the sentencing? Well, with regard to some of the issues raised by the appellant in argument, there was some question about whether he would have tried to subpoena witnesses. And I think it's important to note that he did do that. He had contacted relatives in order to get addresses to give that information to his attorney, and his court-appointed attorney did, in fact, make those efforts to subpoena witnesses. So it's not like he was completely deprived of that. And furthermore, he made various arguments at sentencing itself. To some extent, the district court allowed him to advance certain arguments with regard to the calculation of the quantity, for example, and the court considered those and made rulings accordingly. Well, Mr. Mullins suggests that these witnesses, at least insofar as the drug quantity goes, would have been somebody that had some knowledge about the marijuana being smuggled into the prison. You just mentioned he got addresses of relatives. I'm sorry. They couldn't have had anything to do with quantity. Your Honor, I think with regard to there was a statement where in the sentencing hearing where the defendant had contacted a relative for the purpose of getting addresses for various individuals on the outside, individuals who may have testified before the grand jury, and the government made the point at the time that those were individuals who were called and subject to cross-examination by the defendant as to those issues. I'm sorry. They were called or they weren't? I think that there were some individuals that the defense wanted to call but for Fifth Amendment privilege reasons were unable to, if I recall correctly. And that was discussed at the sentencing? The fact that other individuals had been getting guards, for example, to testify on his behalf, I believe that was discussed at the sentencing. With regard to the request for replacement counsel, that is actually an issue that should be reviewed for abuse of discretion. Was that raised in this case? I'm sorry, what was what raised, Your Honor? Is that an issue that he raises on the other side of whether he should have had replacement counsel? I thought he was just raising the question of self-representation. Well, Your Honor, I think that the two are related because the court interpreted the request for replacement counsel and the request to represent himself as a request for replacement counsel. And so when the court was then advised of the fact that the defendant was dissatisfied with the representation of his court-appointed attorney, he had a duty to inquire into that dissatisfaction. And under Vasquez, he had to consider the timeliness, the adequacy. Well, courts would consider the timeliness and the adequacy of the court's inquiry, the extent of the conflict, as well as balancing those factors with the public's interest in a prompt and efficient administration of justice. But his complaint is not that the court did that. It's that the court only did that. That he said, okay, then I want to represent myself, and the court stopped and didn't go further. So I agree with Judge Seiler. He's not making a claim here that he should have been given substitute counsel. He's making a claim that he should have been permitted to represent himself. I agree with that, Your Honor. I think that the issue is, though, in terms of looking at what the district court did and why it did it. I think that it's the context, as I've said previously, that the court treated it as a request for replacement of counsel and did the proper inquiry into it. I think at one point when the defendant said, I want to represent myself, the court seemed surprised by that and said, well, I didn't realize that was where we were going. And it's understandable that that's what the court was thinking, based on the fact that he had made two statements at the beginning of the hearing that he actually did want counsel and that he wanted replacement counsel, that he wanted effective counsel. All of this was said in the context of the sentencing, and it had been said previously before. Mr. Mullins rested on his brief on this issue about the imposition of consecutive supervised release sentences. You both agree that that's error? Yes, sir. Does the district court have to have another hearing to correct that error? And the reason I'm asking that is if there's going to be another hearing, are we spending a lot of time worrying about the scope of that hearing that we don't really need to? Your Honor, I think – I don't want to misspeak. I think, however, that a technical issue like that could be resolved without a hearing. Just send it back, have them enter a new J&C that eliminates the consecutive nature, if that's one possibility in your mind? One possibility, Your Honor. All right, if that's not correct and there has to actually be a hearing, I'm not sure what would be accomplished at that hearing, but at that point, I assume what the defendant wants here is he wants to actually be able to remake sentencing arguments that he feels he wasn't fully able to make at the time of the original sentencing. Well, Your Honor, if the only issue that's going back to the district court is the issue of the consecutive supervised release, I don't think that the defendant would be in a position to relitigate the other issues at sentencing. That would be determined by the scope of the remand? Correct, Your Honor. So you want a limited remand? Yes, Your Honor, a limited remand simply for the purpose of having the district court address the issue of consecutive versus concurrent supervised release terms. And we ask the court affirm the sentence otherwise. Anything else? Thank you. Thank you, Your Honors. I want to address your questions concerning the structural error and specifically Jones. I just want to focus on this opinion because in Jones, the court made it clear that in a case where counsel conflicted on questions of strategy, for example, and I'm quoting, reversal may have been warranted if the district court resolved the conflict in favor of counsel. Jones' rights to self-representation would have been violated. Basically, in Jones, they're saying, yes, there could be the situation where it was an error, but in other cases, and I would argue such as Mr. Evans' case, where he clearly was in disagreement with his counsel on how to proceed on a number of issues, this would be structural error. I also think... Wait just a second there. Let's assume for a second that all of those issues related to his request for his counsel to complain about what happened at the trial in a way in which it would be irrelevant to the sentencing. You may not accept that premise, but let's just accept that for a minute. Why would that still be structural error? In other words, you're demanding that your attorney do something that doesn't have anything to do with the sentencing. You don't get it, so therefore it's structural error? How can that be? It's structural error because the right to control and manage your own defense is so fundamental. It implicates, and I'll argue, first of all, it implicates due process. It's obviously protected by the Sixth Amendment. But all the rights that are included and enumerated in the Sixth Amendment concern this right to control your defense. A tax protester gets convicted. He then is facing sentencing, and he insists that his attorney argue that he is not a citizen of the United States and or taxes are voluntary, so you can't make me pay. The attorney refuses. He asks to represent himself to make that argument. The failure to grant him the right to show up at the sentencing hearing and make that argument is structural error. Even though the cases make it abundantly clear in my hypothetical that those arguments are, one, non-starters, and two, even if they had some merit, don't have anything to do with the sentencing. But that's still structural error. It is, Your Honor, because it's a personal right to defend yourself in the way you feel, in the way you choose. It may not have any chance of success, but that is the right. And I think there's a lot of support for this in FREDA itself. Why, then, in Jones, are they concentrating or talking about how it's important in the context of how the jury sees you and how the jury weighs the evidence? I think in Jones, Judge, in that discussion, they're talking about two separate situations. The first concerns that issue with being in front of the jury. The second one is more about, and I'll quote, to make sure the defense allows, I'm sorry, if standby counsel's participation over the defendant's objection to effectively allow counsel to make or substantially interfere with any significant tactical decisions or to control questioning or witnesses or to speak instead of the defendant on any matter of importance, the FREDA right is eroded. That's the first prong here, and that's the prong that is still applicable at sentencing. This right is so enshrined. This right was enacted, was codified before the Bill of Rights. So enshrined it hasn't been discussed by the Supreme Court? It has, Judge, in the terms of FREDA. And I think that the language in FREDA provides ample support that this is a structural error at every critical phase of a trial. And again, I would just suggest to look at the right to the assistance of counsel. What I would also suggest is secondary to the right to self-representation. That is clearly a structural error if that's denied at sentencing. And for that reason alone, Judge, I would ask the Court to remand this case. All right. Thank you. Thank you.